IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CANDACE A. PARKS, and
KRISTIN C. KELLY

     Plaintiffs,

v.                                                                    Case No. 6:15-1196-JTM-GEB

CONSTANCE B. KIEWEL,

     Defendant.

## MEMORANDUM AND ORDER

This matter comes before the court on a Motion to Dismiss (Dkt. 8) filed by defendant

Constance B. Kiewel.  For the reasons explained below, defendant's motion is granted.

### I.        Factual and Procedural Background

In 1992, Emily Ann Kelly ("decedent") drafted her Last Will and Testament with the

following provisions:

> 1.        To give, devise and bequeath certain specific items of tangible personal
> property which she may own at the time of her death to persons listed in a
> separate written statement, to be in existence at the time of her death; and
>
> 2.        To give, devise and bequeath all of the rest, residue, and remainder of her
> property, both real and personal, including the proceeds of any life insurance
> policy to her three daughters equally.

Dkt. 9-1, at 3-4.  The document named Emily's three daughters, now parties to this lawsuit:

plaintiffs Candace A. Parks and Kristin C. Kelly, and defendant Constance B. Kiewel.  Dkt. 9-1,

at 4.  Emily nominated and appointed defendant to serve as executrix of her will and, in the event

that defendant could not serve, she nominated plaintiff Candace A. Parks.  Dkt. 9-1, at 4.

Defendant was also named Emily's power of attorney.  Dkt. 1, at ¶ 11.  Emily passed away on January 28, 2015.  Dkt. 1, at ¶ 6.

On or about April 15, 2015, plaintiffs received correspondence from defendant's counsel advising that substantially all of the property in Emily's estate was allegedly transferred *outside* of probate via pay on death (POD) designations, transfer on death (TOD) designations, and/or joint tenants with rights of survivorship (JTWROS), with defendant being the beneficiary of each designation.  Dkt. 1, at ¶ 9.  *See also* Dkt. 12-1.  Plaintiffs allege that defendant also received direct gifts from Emily and may be named as the beneficiary of retirement accounts and/or life insurance policies.

On June 24, 2015, plaintiffs filed suit in the United States District Court for the District of Kansas alleging: (1) breach of fiduciary duty; and (2) duress, undue influence, and fraud.  Dkt. 1.  Plaintiff requested that the court: (1) award damages in an amount to be determined, including pre- and post-judgment interest; (2) order defendant to provide a full accounting of any and all property or properties obtained by her that had a genesis with decedent, whether the property vested in defendant's name during the lifetime of decedent or upon decedent's death via POD or TOD designations, or JTWROS; (3) order that any transfers, either directly or indirectly, from decedent to defendant be set aside and all property be marshaled for the estate; (4) order that defendant forfeit and not inherit any property from decedent; and (5) disgorge defendant of any and all property and/or income earned from property which had a genesis with decedent.  Dkt. 1.

Plaintiffs argue that this court has subject matter jurisdiction over this action based on diversity of citizenship under 28 U.S.C. § 1332.

On August 11, 2015, defendant filed a Motion to Dismiss (Dkt. 8) alleging that this court lacks subject matter jurisdiction under the "probate exception" to diversity jurisdiction.  In the

alternative, defendant alleges that plaintiffs lack standing and fail to state a claim for breach of fiduciary duty, fraud, and disgorgement.  Dkt. 9.

## II.      Legal Standard: Rule 12(b)(1)

"The district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotation and citation omitted). Federal subject matter jurisdiction is essential to "every cause under review in the federal courts." *Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1022 (10th Cir. 2012).  Under Federal Rule of Civil Procedure 12(b)(1), a party may move for dismissal based upon a court's lack of subject matter jurisdiction.  When analyzing a Rule 12(b)(1) motion to dismiss, the court presumes it lacks subject matter jurisdiction until the plaintiff can prove otherwise.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is presumed that a cause lies outside [the court's] limited jurisdiction, [] and the burden of establishing the contrary rests upon the party asserting jurisdiction.").

## III.      Discussion

### A.      Subject Matter Jurisdiction

#### 1.      History of Probate Exception

Defendant argues that the court lacks jurisdiction over this action because the lawsuit falls under the "probate exception" to federal subject matter jurisdiction.  Dkt. 9, at 5-7.  To best understand this somewhat unique exception, it is helpful to understand its history.

In 1946, the United States Supreme Court held that "a federal court has no jurisdiction to probate a will or administer an estate, the reason being that the equity jurisdiction conferred by the Judiciary Act of 1789 and § 24(1) of the Judicial Code, which is that of the English Court of

Chancery in 1789, did not extend to probate matters." *Markham v. Allen*, 326 U.S. 490, 494 (1946).  However, the Court reasoned,

> it has been established by a long series of decisions of this Court that federal courts of equity have jurisdiction to entertain suits in favor of creditors, legatees and heirs and other claimants against a decedent's estate to establish their claims so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control the property in the custody of the state court.

*Id*.  Therefore, "while a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, it *may* exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession . . . ."  *Id*. (emphasis added).

Although likely intended to be a clear guide for the Court's intentions for the probate exception, *Markham* proved anything but clear when interpreted by lower courts.  Confused by the directive that federal courts *have* jurisdiction "so long as [they do] not *interfere* with the probate proceedings," *Markham*, 326 U.S. at 494 (emphasis added), federal courts began interpreting *anything* having to do with probate as a sort of hands-off situation.

Recognizing the growing confusion, and apparently unwilling to allow the continued expansion of the exception, the Supreme Court, in *Marshall v. Marshall*, 547 U.S. 293 (2006), drastically narrowed the exception.  *Marshall* dealt with a claim that the ultimate beneficiary of an estate fraudulently prevented the transfer of an intended gift to the plaintiff.  547 U.S. at 304. The Supreme Court held that "the single claim at issue, for tortious interference with the plaintiff's expected gift, sought an *in personam* judgment against the defendant, not the probate or annulment of a will, nor any *res* in the custody of the probate court.  As such, it was not barred by the probate exception."  *Three Keys LTD v. SR Utility Holding Co.*, 540 F.3d 220, 226-27 (3d Cir. 2008) (citing *Marshall*, 547 U.S. at 312).

4

The Court went on to clarify what constitutes "interference with the state court's possession" as follows:

> We comprehend the "interference" language in *Markham* as essentially a reiteration of the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*. Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Id*. at 227.

Courts have subsequently distilled the *Marshall* holding as follows:

> It is clear . . . that unless a federal court is endeavoring to (1) probate or annul a will, (2) administer a decedent's estate, or (3) assume *in rem* jurisdiction over property that is in the custody of the probate court, the probate exception *does not apply*.

*Id*. (emphasis added).

### 2.    Application

The Tenth Circuit has not yet had occasion to deal with the probate exception in any kind of detail. Nor have the district courts of this circuit. In fact, review reveals only a handful of cases dealing with this issue, none of which are directly on point to the facts in the matter at hand. As such, this court turns to our sister courts for guidance.

Plaintiffs allege, in relevant part:

The Last Will and Testament of Emily Ann Kelly provided that Plaintiffs and Defendant would inherit her property equally.

Throughout the lifetime of Emily Ann Kelly, it was the understanding of the Plaintiffs and the Defendant that upon the death of their mother, her property would be bequeathed equally to her daughters.

On or about April 15, 2015, Plaintiffs received correspondence from counsel for the Defendant advising that substantially all of the property of Emily A. Kelly

was transferred outside of Probate via POD designations, TOD designations and/or JTWROS with the Defendant being the beneficiary of each designation.

Upon information and belief, the Defendant also received direct gifts from the decedent and may be named as the beneficiary of retirement accounts and/or life insurance on the life on the decedent.

The Defendant was in a position of trust with the decedent, including, but not limited to possessing a Power of Attorney.

The Defendant owed fiduciary obligations to Emily A. Kelly.

The conduct of the Defendant constitutes a breach of fiduciary duty.

The breach of fiduciary duty was calculated to circumvent the mandates of the Last Will and Testament of the decedent.

The conduct of the defendant in marshaling the "gifts" from her mother to circumvent the mandates of the Last Will and Testament of the decedent was perpetrated with duress, undue influence and fraud.

Dkt. 1, at ¶¶ 7-12, 16-17, 25.

Liberally construed, plaintiffs' claims for breach of fiduciary duty and duress/undue influence/fraud are not barred by the probate exception because they seek, at least in part, *in personam* jurisdiction over defendant and do not seek to probate or annul a will.  Instead, these claims allege that defendant received assets from Emily during her lifetime by misusing the Power of Attorney executed by Emily in her favor and that plaintiffs were damaged as a result. Moreover, the assets in questions were allegedly transferred during Emily's lifetime, or upon her death via POD designations, TOD designations, and JTWROS, and were therefore not part of Emily's estate at the time of her death.  Accordingly, these assets would *not* be subject to the probate court's disposition, should Emily's estate ever actually *be* submitted to probate.  *See Wisecarver v. Moore*, 489 F.3d 747, 750-51 (6th Cir. 2007).[1]

---

[1] The court is very careful here to limit plaintiffs' claims to money damages related to the allegedly improper *inter vivos* transfers.  To the extent that plaintiffs' claims for breach of fiduciary duty and duress/undue influence/fraud seek money damages to be paid out of the estate itself, the court lacks jurisdiction, as awarding such

The problem, however, lies with the nature of the relief requested by plaintiffs. As currently pled, this case presents two distinct categories of relief. The first category consists of damages to be levied against defendant *in personsom* for the tort claims of breach of fiduciary duty and duress/undue influence/fraud, as noted above. In other words, plaintiffs seek damages in an amount to be determined, as well as pre- and post-judgement interest from defendant herself. There is no question that these damages will *not* be drawn from estate property, and therefore, this court will not be called upon to exercise its *in rem* jurisdiction over such property.

Likewise, plaintiffs also seek an order disgorging defendant of any and all property and/or income earned from property which has a genesis with the decedent. Again, plaintiffs do not seek disgorgement of funds *in* Emily's estate; rather, they seek *in personam* damages against defendant.[2]

The *other* category of relief, however, is somewhat more difficult. Plaintiffs also seek (1) an order mandating *production* of all of the property received by defendant and an order to set aside all *inter vivos* transfers; (2) an accounting; and (3) an order barring defendant from inheriting any and all property from Emily that defendant might have otherwise enjoyed but for her alleged misconduct.

Generally speaking, "[r]equests to return property to an estate or trust, rather than to dispose of property currently part of an estate or trust, do not fall within the probate exception because the *res* at issue is not within the probate court's jurisdiction if it was not part of the

---

damages would be prohibited by the probate except as it would be "tantamount to setting aside the will." *Wisecarver*, 489 F.3d at 750 n.1.

[2] The court recognizes that the decision on this particular request for relief would be decidedly different if the estate was currently involved in probate proceedings. *See Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 107 (2d Cir. 2007) (denying jurisdiction, noting that to provide the disgorgement relief requested, the federal court would have to assert control over property that remained under the control of the state probate court, an act specifically prohibited by *Marshall*).

estate at the time of the decedent's death."  *Marcus v. Quattrocchi*, 715 F. Supp. 2d 524, 534 (S.D.N.Y. 2010).  *But see Czarnetzki v. Andrews, et al.*, 2012 U.S. Dist. LEXIS 164953, at *4-5 (D.N.J. Nov. 19, 2012) (When asked to enter an order returning property to an estate, the court held that "[t]o grant this relief, the Court will have to first determine whether the funds at issue belong to the Estate.  But deciding what belongs to the Estate is the same thing as administering the Estate, and that is precisely what *Marshall* prohibits.").  Here, again, the disputed property was transferred out of Emily's estate either prior to or at the time of her death.  As such, the requests to return the property and set aside the transfers do not fall within the probate exception.

Next, plaintiffs seek a full accounting of any and all property or properties obtained by defendant that had a genesis with decedent, whether the property vested in defendant's name during Emily's lifetime or upon her death via POD or TOD designations, or JTWROS.  As mentioned above, the removal of these assets from Emily's estate during her lifetime removes them from the limited scope of the probate exception.  Plaintiffs' request for an accounting "does not magically transform their basic tort claims into allegations asking the Court to exercise jurisdiction over a *res* under state court jurisdiction."  *Marcus*, 715 F. Supp. 2d at 534.

The final request for relief, an order barring defendant from inheriting under Emily's will, is, however, different.  Emily's will very clearly states that each of her daughters is to share in the remainder of the estate equally.  Plaintiffs are essentially asking this court to alter or annul that provision in its administration of the will, actions that this court, under *Marshall*, cannot do.  Courts have interpreted the first two prohibitions set forth in *Marshall*, that federal courts cannot "probate or annul a will" or "administer a decedent's estate" to mean that federal courts do *not* have jurisdiction "over any claims for relief or theories of recovery that require a determination concerning the validity and/or construction of a testamentary document."  *Grey v. Johansson*,

2014 U.S. Dist. LEXIS 119223, at *12-13 (D.N.J. Aug. 26, 2014) (citing *Rothberg v. Marger*, 2013 U.S. Dist. LEXIS 44473, at *18-19 (D.N.J. Mar. 28, 2013)).

In *Grey*, the plaintiff requested that the district court determine the validity of a provision in a testamentary instrument.  *Id*. at *12.  The defendants asked the court to find those same provisions invalid.  *Id*.  In its analysis of the probate exception, the district court concluded that the plaintiff's claim required the court to determine the *validity* of a testamentary provision and, as such, the probate exception barred federal jurisdiction.  *Id*. at *14.

The same is true here: plaintiffs are asking this court to find a provision of Emily's will, the provision that leaves the remainder of her estate to her three children equally, invalid.  The probate exception should therefore bar federal jurisdiction.

There is, however, one clear distinction between the case at hand and the facts outlined in *Grey*.  In *Grey*, the contested will had already been submitted to probate.  This is not the case here.  As the parties acknowledge, plaintiffs filed the will of record with the Sedgwick County District Court pursuant to K.S.A. § 59-618a in order to preserve it for probate.  Dkt. 9, at 4.  However, *no* formal probate proceedings have been commenced for Emily's estate.  Dkt. 9, at 4.  Therefore, any "administration" of Emily's will that this court must do necessarily will not interfere with any *res* over which any state court currently has custody.

However, the instances in which the probate exception applies are mutually exclusive.  As noted above, a federal court lacks jurisdiction if it is attempting to: (1) probate or annul a will, (2) administer a decedent's estate, *or* (3) assume *in rem* jurisdiction over property that is in the custody of the probate court.  *Three Keys*, 540 F.3d at 227.  Even if a will has not yet been submitted to probate, therefore depriving a federal court of jurisdiction under option three, a

federal court may *still* lack jurisdiction over the claims that require the court to probate, annul, or administer the instrument.

Accordingly, the court finds that it lacks jurisdiction over plaintiffs' request to disinherit defendant, as the requested relief requires this court to, at the very least, administer Emily's will.

Having found that the probate exception applies, at least in part, the question before the court now becomes whether all, or only some, of plaintiffs' claims must be dismissed. This task is complicated by the fact that plaintiffs seek a mixture of relief for one claim, namely Count 3, duress/undue influence/fraud. Under this claim, plaintiffs request that the court: (1) award plaintiffs damages, as well as pre- and post-judgment interest; (2) mandate production of all of the property received by defendant from Emily; and (3) mandate that defendant forfeit and not inherit any property from Emily. Dkt. 1, at 5.

Facing a similar situation, the Third Circuit, in *Three Keys*, dismissed *all* of the plaintiff's claims, even those that only sought *in personam* relief. The court held that

> [o]n the surface, these claims seek to impose liability against the Defendants as legal persons, which would call for *in personam* jurisdiction. However, not only does Three Keys seek as relief the distribution of probate property, Three Keys also seeks a determination that its interest in the [estate] is superior to the interest of the Estate. Each of these claims, whether characterized as an *in personam* action or not, requires the District Court to endeavor to dispose of property that is in the custody of a state probate court, which is prohibited by the probate exception.

*Three Keys*, 540 F.3d at 229-30.

Similarly, in *State of New Jersey ex rel. McDonald v. Copperthwaite*, 2014 U.S. Dist. LEXIS 72414 (D.N.J. May 28, 2014), the district court found that, in addition to the *in personam* relief that the plaintiff sought for each of her claims, she *also* included a blanket *ad damnum* clause to that applied to each count and that sought a declaratory judgment. The district court

held that the plaintiff could not have both types of damages she desired and still remain in federal court. *McDonald*, 2014 U.S. Dist. LEXIS 72414, at *43.

> This Court may award money damages against *in personam* defendants for their tortious conduct, but The Court is prohibited by the probate exception from imposing a constructive trust over estate assets, or extinguishing the ownership interests of rival claimants to specific estate property already in the custody of the . . . probate courts.

*Id*. at *44.   The court therefore declined to exercise jurisdiction over the plaintiff's claims to the extent that they sought declaratory relief.

Adopting the approach of the *McDonald* court, this court finds that plaintiffs cannot have both types of relief they request and remain in federal court.  In other words, plaintiffs cannot seek both *in personam* damages *and* an order disinheriting defendant as the latter relief would require this court to administer, if not annul, Emily's will.  Accordingly, this court declines to exercise jurisdiction over plaintiffs' claims to the extent that they seek a judgment disinheriting defendant.[3]

## B.    Breach of Fiduciary Duty

Having established that this court has jurisdiction over at least some of plaintiffs' claims and requests for relief, it turns to defendant's proffered reasons for dismissing each of the claims individually.  With regard to breach of fiduciary duty, defendant alleges that plaintiffs lack standing to even bring such a claim and, even if they *had* standing, the complaint fails to state a claim upon which relief may be granted.

### 1.    Standing

With regard to standing, defendant alleges that plaintiffs are "clearly purporting to act for [Emily's] estate," yet lack the standing to do so.  Dkt. 9, at 7.  This is clear, defendant claims,

---

[3]  The court notes that, based on a plain reading of the Complaint, it is only plaintiffs' claim for duress/undue influence/fraud that seeks such "mixed" relief.

from the face of the Complaint itself.  Although they allege breach of fiduciary duty, plaintiffs

fail to acknowledge that any fiduciary duty existed between themselves and defendant; rather,

they allege that defendant, as Emily's power of attorney, "owed fiduciary obligations" to *Emily*.

Dkt. 9, at 7.

Article III of the U.S. Constitution limits the exercise of the federal judicial power to

cases and controversies.  U.S. CONST. art. III, § 2.  The doctrine of standing serves to identify

cases and controversies that are appropriate for the exercise of judicial power.  To satisfy Article

III's standing requirements, a plaintiff must show: (1) it has suffered an "injury in fact" that is

concrete and particularized and actual or imminent; (2) the injury is fairly traceable to the

challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the

injury will be redressed by a favorable decision.  *Unicredit Bank AG v. Deborah R. Eastman,*

*Inc.*, 2013 U.S. Dist. LEXIS 82919, at *7-8 (D. Kan. Jan. 22, 2013) (citing *Friends of the Earth,*

*Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 180-81 (2000)).  A motion to dismiss for lack of

standing implicates the court's subject matter jurisdiction and, therefore, is construed pursuant to

Rule 12(b)(1).  *Id*. at *8.

Given the liberal standard of review governing a motion to dismiss, the court must reject

defendant's argument that plaintiffs lack standing.  Here, it is clear, at least on the face of the

Complaint, that plaintiffs have suffered an "injury in fact" by allegedly being denied their

property as should have been awarded to them under Emily's will, that this injury is traceable to

the actions of defendant, given her alleged misappropriation of the estate assets, and that the

injury will be redressed by a decision in plaintiffs' favor.  As such, the court declines to dismiss

plaintiff's claim for breach of fiduciary duty on the basis of standing.

##### 2.    Failure to State a Claim

This is not the case, however, with regard to defendant's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6).

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6). Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.  *Iqbal*, 566 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of the claims as well as the grounds upon which each claim rests.  *See Robbins v. Okla.*, 519 F.3d 1242, 1248 (10th Cir. 2008) (internal citations omitted); *see also* FED. R. CIV. P. 8(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief.").

Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.  *Iqbal*, 556 U.S. at 678-79.  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.  *See id.* at 678. ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across

13

the line from conceivable to plausible.'"  *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

"To show a breach of fiduciary duty, the claimant must first establish that there was a fiduciary relationship *between the parties*."  *Leathers v. Leathers*, 2010 U.S. Dist. LEXIS 47541, at *31-32 (D. Kan. May 13, 2010) (emphasis added).  Here, plaintiffs plead that the fiduciary relationship existed between defendant and Emily, *not* between themselves and defendant.  Dkt. 1, at ¶ 11-12, 16-17.

Accordingly, defendant's motion to dismiss Count 1, breach of fiduciary duty, on the grounds of failure to state a claim is granted.

## C.   Duress/Undue Influence/Fraud

In Count 3, plaintiffs allege that the "conduct of the Defendant in marshaling the 'gifts' from her mother to circumvent the mandates of the Last Will and Testament of the decedent was perpetrated with duress, undue influence and fraud."  Dkt. 1, at ¶ 4.  Defendant alleges that, without more, plaintiffs have failed "to allege any additional facts or circumstances that make such a claim plausible."  Dkt. 9, at 12.[4]

Under Fed. R. Civ. P. 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  The Tenth Circuit has held that "a complaint alleging fraud must set forth the time, place, and contents of the false representation, the identity of the party making the false statements, and the consequences thereof."  *Geisler v. Don Hunt & Assocs.*, 2012 U.S. Dist. LEXIS 37850, at *10 (D. Kan. Mar.

---

[4] The court acknowledges that defendant also challenges plaintiffs' standing on this count, as well.  For the reasons previously stated on pages 12-13 *supra*, defendant's motion to dismiss for lack of standing on this count is denied.

20, 2012) (quoting *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000)). "At a minimum, this requires that a plaintiff set forth the 'who, what, when, where and how of the alleged fraud.'"   *Id*. at *11 (quoting *United States ex rel. Sikkenga v. Regence Bluecross Blueshield*, 472 F.3d 702, 726-27 (10th Cir. 2006)).

In an attempt to get around this heightened pleading standard, plaintiffs allege that the "fraud" in the phrase "duress, undue influence and fraud" is more of a "constructive fraud. The claim is akin to the principles of conversion, unjust enrichment, and tortious interference with expectancy." Dkt. 12, at 13. As such, "[n]otice pleading is all that is required." Dkt. 12, at 14.

In the alternative, plaintiffs ask this court to view defendant's motion to dismiss as a motion for a more definite statement and allow plaintiffs leave to amend to add the requisite specificity.

If plaintiffs are not actually seeking damages for fraud, it is curious why they would mention, not *just* in the heading of the claim, but in the actual *text*, "duress, undue influence and fraud." However, even when faced with defendant's motion to dismiss under Rule 12(b)(6), plaintiffs fail to offer any more concrete information. Instead, they request a leave to amend. Yet, they fail to include, in their Response, what an amended complaint might include. They merely note that additional specificity could be added "based upon the twenty-five (25) years of journal/diaries of the decedent, and the email communication between the decedent and her daughters." Dkt. 12, at 13.

Absent more information that plaintiffs will indeed be able to plead their claim with the required specificity pursuant to Rule 9(b), the court finds it unnecessary to grant plaintiffs leave to amend. Accordingly, defendant's motion to dismiss Count 3 based on a failure to state a claim is granted.

**D.      Disgorgement and Accounting**

Although presented as separate legal actions, Counts 2 and 4, plaintiffs' "claims" for an accounting and disgorgement of profits, are really nothing more than sought after *relief*. Defendant alleges that plaintiffs fail to maintain a claim for disgorgement.  However, without an appropriate legal action under which plaintiffs might be awarded such relief, the court finds it unnecessary to deal with these alleged "claims."

**IT IS THEREFORE ORDERED** this 18th day of November, 2015, that defendant's Motion to Dismiss (Dkt. 8) is hereby granted.

s/J. Thomas Marten
J. THOMAS MARTEN, JUDGE